IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Criminal Case No.  03-CR-00011-B

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DON WAYNE DAVIS,

        Defendant.

_____

ORDER
_____

        Execution of a search warrant at the house of the defendant, Don Wayne Davis, yielded evidence sufficient to predicate an indictment of Mr. Davis and an alleged co-conspirator, William Dean Davis, for various narcotics and firearm offenses.  By motion for suppression, Mr. Davis challenges, pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the integrity of the affidavit submitted in support of the application for the warrant.  On March 23, 2006,  I conducted an evidentiary hearing.  I am also aided by the briefs of the parties and by documentary evidence submitted therewith.  For the reasons stated below, I GRANT the motion.

        The affiant-officer, Sargent Michael Abromowich, testified candidly and credibly, and I find and conclude that the omissions from his affidavit, described below, were not accomplished with intentional falsity.  I must determine, then, whether Sargent Abromowich neglected to include the information with reckless disregard for the truth. *Franks*, 438 U.S. at 155.  If so, and

if "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156. An affiant's negligence or innocent mistake is insufficient to instigate the operation of *Franks*. *United States v. Knapp*, 1 F.3d 1026, 1029 (10th Cir. 1993).

The *Franks* standards apply with equal force to material omissions as they do to affirmative falsehoods. *United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000). Courts reviewing the intentional or reckless omission of material information ask whether, assuming that the magistrate judge had been apprized of the omitted information, the judge still would have found probable cause to issue the search warrant. *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002).

**I. Facts**

I find the following facts from Sargent Abromowich's testimony and from the documentary evidence. On February 17, 2002, Sargent Abromowich, then a detective with the Boulder County Drug Task Force ("BCDTF"), submitted his affidavit with an application for a warrant to a judge of the State of Colorado. The affidavit commences with Sargent Abromowich's then-current training and experience and the known criminal history of Sargent Abromowich's two targets, Mr. Davis and his brother, William, also known as "Willie." It informs that Mr. Davis's record includes, *inter alia*, four previous entries for narcotics charges – in 1973, 1984, 1997 and 1998 – and two counts of weapons possession in 1984. William also had a long criminal history, which included a weapons charge in 1985 and a weapons- and drug-related incident in 1994. Neither brother had been charged with possessing weapons or drugs

more recently than 1998.

The affidavit next recites a December, 2001 telephone call that Sargent Abromowich received from an anonymous tipster known to reside in Arizona, who claimed to have seen Mr. Davis and Willie sell cocaine in a bar located in Louisville, Colorado called Gentleman Jim's. The informant identified the Davis' vehicle and the approximate location of their home, which Sargent Abromowich confirmed. Sargent Abromowich bolstered the tip by mentioning in his affidavit, "Your Affiant knows of Gentleman Jim's bar in Louisville and has received repeated complaints over the years by individuals, informants and patrol officers that the Davis's (sic) were selling cocaine at that location." However, Sargent Abromowich identified none of those sources in the affidavit.

The affidavit goes on to state,

> On 06-28-01, 06-29-01, 06-30-01 your Affiant interviewed and remained in contact with an individual named Billie Jean Elrod. Ms. Elrod informed your Affiant that she had personal knowledge that Don Wayne Davis deals high-grade cocaine (Peruvian flake) and that while she was at the [Davis] residence on 06-28-01, she witnessed the cocaine and an "Uzi style" machine gun in one of the bedrooms. Your Affiant has never been able to corroborate this particular information.

Then followed references to Mr. Davis' alleged involvement in a motorcycle gang and an eight-year-old report from the Drug Enforcement Administration implicating Mr. Davis in the possible manufacture of methamphetamine. Next, Sargent Abromowich reported,

> Since receiving this information your Affiant has attempted to conduct trash inspections at 1008 Lafarge Ave in Louisville Colorado [the Davis' residence]. Until 02-14-02, your Affiant has never been able to obtain the trash from 1008 Lafarge.

> On 02-14-02, your Affiant drove northbound in the alley to the east of Lafarge Ave in Louisville. This alley is adjacent to Lafarge Ave. Your Affiant knows from surveillance operations and other attempted trash inspections that the Davis's (sic) keep their singular, blue, Town and Country trash receptacle in the alley next to the opening in their fence. At

3

approximately 9:00 am, your Affiant observed the above mentioned trash receptacle in the Alley next to the fence of 1008 Lafarge Ave. Your Affiant drove next to the trash receptacle and opened the lid. Your Affiant observed several bags of trash in the receptacle. Your Affiant then took the receptacle and placed it into the back of a truck and transported it to the Boulder County Drug Task Force. Boulder County Drug Task Force Detectives Nick Goldberger, Brian Lindsey, and your Affiant looked through the trash. It should be noted that the trash inspection was completed over a two-day period and further evidence was located on 02-15-02. The reason behind the time frame was to corroborate evidence found in this trash inspection to evidence found in another trash inspection and because of the large amount of letters and paper items in the trash. We located the following items:

Item MA#1: 16 pieces of burnt tin foil.

Item MA#2: 1 small magazine bindle folded into a square containing a very minuet (sic) amount of presumptive cocaine. Boulder County Drug Task Force Detective Nathan Vasquez and your Affiant tested the cocaine by conducting a NIK Cocaine Wipe Swab test. The Cocaine Wipe Swab turned blue which is an indication that the substance is cocaine.

Item MA#3: 6 small magazine bindles folded into squares. The bindles were empty. The bindles were swabbed with the NIK Cocaine Wipe swabs, but they did not test positive for cocaine.

Item MA#4: 12 precut unfolded magazine bindles.

Item MA#5: 1 color computer printout displaying directions on how to manufacture methamphetamine.

Item MA#6: 1 Aleve cold medication packet containing four empty separate squares.

Item MA#7: 5 BIC lighters with the striker removed. The lighters were found in a Marlboro Cigarette pack.

Item MA#8: Indicia / QWEST phone bill for Don Davis at 1008 Lafarge Ave Louisville Colorado 80027.

Item MA#9: Indicia / AT&T phone bill for Don Davis at 1008 Lafarge Ave Louisville CO 80027.

Item MA#10: 3 small Ziploc plastic baggies, one large plastic baggie. All of the plastic baggies were tested, but there wasn't enough substance to obtain a reading.

Item MA#11: Indicia / Tax return form for Don Davis at 1008 Lafarge Ave Louisville Colorado 80027.

Item MA#12: 2 BIC lighters with the strikers removed.

Item MA#13: A note for "Willie."

Sargent Abromowich went on to explain the significance of the paraphernalia listed above.

Because Sargent Abromowich wrote the affidavit on a weekend, he was unable to submit the document to a prosecutor or superior officer for review. He had, at that time, been assigned to the BCDTF for approximately thirteen months and had composed five or six applications for warrants. He took the affidavit to a state court judge who, based upon the strength of the recitation, issued a search warrant.

That Ms. Elrod, Sargent Abromowich's named informant, has a criminal history comprising several pages was omitted from the affidavit. Indeed, among the numerous charges against Ms. Elrod are several for crimes of dishonesty, including fraud, making false reports, forgery, and impersonation to gain a benefit. No evidence appears to suggest that Ms. Elrod had provided accurate information to law enforcement officials before this occasion.

Under examination at the hearing, Sargent Abromowich provided additional information not included in the affidavit. He testified credibly that between September, 2001 and February, 2002, he had looked inside the Davis' trash can on between six and ten occasions. On all of those occasions prior to February 14, the can was empty. When he took the trash can from the alley, it contained at least two large bags; his notation in the affidavit led him to believe that there were at least three. He could not say which items had been located in which bags, or whether the inculpatory items were found in the same bags as the documents containing Mr. Davis' name and address. He had not monitored the alley before obtaining the can and had not seen anyone place the can or the trash. Indeed, contrary to his insinuation in the affidavit, he had not conducted

surveillance of the alley other than to look inside the (empty) trash can on a few occasions.

He did not know, and could not identify, the unnamed caller from Arizona. He was aware that a fellow detective had attempted without success on six occasions between July and September, 2001 to purchase narcotics from Willie. He interviewed Ms. Elrod while she was in custody for allegedly passing bad checks, but did not offer her anything for her cooperation. He was aware of Ms. Elrod's criminal history, which he characterized as "extensive," having obtained a report of it before he wrote the affidavit in this case. He did not consider Ms. Elrod a credible informant, but included her statement in the affidavit because, he believed, it demonstrated a pattern of drug activity by Mr. Davis. He did not include any false information in the affidavit and did not intend to deceive the issuing judge.

## II. Discussion

The omitted information was clearly critical to a finding of probable cause, for two reasons. *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990), *cert. denied sub nom. Welsh v. DeLoach*, 502 U.S. 814, 112 S. Ct. 65, 116 L. Ed. 2d 41 (1991). First, when supplied, Ms. Elrod's history of dishonesty undermines the credibility of her account, which must be excised. *United States v. Vigeant*, 176 F.3d 565, 573 (1st Cir. 1999). Ms. Elrod's proclivity toward deceit vitiates her willingness to be named in the affidavit. Courts typically attribute greater weight to the report of a named informant "because she presumably knows that the police could arrest her for making a false report." *State v. Lindquist*, 205 N.W.2d 333, 335 (Minn. 1973). Ms. Elrod evidently has no compunction about making false reports and has in the past demonstrated insufficient fear of arrest to prevent her from prevaricating. "In the absence of countervailing evidence to bolster the informant's credibility or the reliability of the tip, an informant's criminal

past involving dishonesty is fatal to the reliability of the informant's information, and... her testimony cannot support probable cause." *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000), *cert. denied*, 531 U.S. 1000, 121 S. Ct. 499, 148 L. Ed. 2d 470 (2000).

Though named, Ms. Elrod did not reprise the role of a "good citizen who is acting in the best interests of society." *People v. Trontell*, 533 P.2d 1124, 1125-1126 (Colo. 1975). At the time of her cooperation, she was in custody after apprehension for fraud by check. Whatever her motivations, about which I decline to speculate, she is not entitled to the unquestioning deference normally afforded to citizen informers. Nor did Ms. Elrod's statement implicate her in criminal activity, and her tip does not bear the indicia of candor that attends willing submission to conviction and opprobrium. *Contrast*, *United States v. Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971); *United States v. Hall*, 171 F.3d 1133, 1143 (8th Cir. 1999), *cert. denied*, 529 U.S. 1027, 120 S. Ct. 1437, 146 L. Ed. 2d 326 (2000). Also, Sargent Abromowich did not corroborate Ms. Elrod's story. *Vigeant*, 176 F.3d at 575; *United States v. Hall*, 113 F.3d 157, 158 (9th Cir.1997). *Contrast*, *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

Second, with Ms. Elrod's statement removed, the affidavit demonstrates little cause for the issuance of a warrant. Apart from the conclusory allegation that the Davises had dealt drugs, the anonymous tipster from Arizona provided only readily-observable information about their residence and car. *United States v. Soto-Cervantes*, 138 F.3d 1319, 1323 (10th Cir. 1998); *United States v. Tuter*, 240 F.3d 1292, 1298 (10th Cir. 2001). Also, nothing appeared in the affidavit to indicate that the anonymous informant's information was reliable or timely. *United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003). The information suggesting Mr. Davis' prior

7

involvement in drug activity was more than eight years old on February 14, 2002. "Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). Finally, Sargent Abromowich did not monitor the Davises' residence, arrange a controlled buy, or directly corroborate in any other way the tips he received. *Helton*, 314 F.3d at 823. Indeed, he omitted from the affidavit that fellow detectives had attempted, without success, to purchase drugs from Willie.

The trash grab and the Davises' aged criminal histories remain. They are insufficient to establish probable cause. Indeed, Sargent Abromowich implicitly conceded as much when he testified that he had included the statements of the Arizona informant and Ms. Elrod in order to demonstrate that Mr. Davis had historically engaged in a pattern of drug use. Though he remonstrated that Ms. Elrod was not a reliable informant and disclaimed any intention that the issuing judge should rely "completely" upon her statement, he nevertheless included her tale in the affidavit in order to bolster his case. In short, he included the tips in order to persuade and omitted detracting information purportedly because he thought the tips were not persuasive.

The tactic succeeded; against the backdrop of uncorroborated innuendo that the two informants provided, the trash grab appears substantive. But without that reinforcement, the items in the trash constitute a skeletal and disjointed edifice, incapable of founding probable cause. *Vigeant*, 176 F.3d at 575. The instructions for manufacturing methamphetamine possibly belie a peccant curiosity, and the presence of cocaine on one of the bindles and the burnt aluminum foil suggest that persons in the vicinity of the Davises' house were using drugs. However, Sargent Abromowich could not state whether persons other that the Davises used the receptacle; he had

neither conducted surveillance of the public alley nor witnessed any person depositing the trash, and he presumed the nexus to the Davises' house based exclusively upon proximity. He could not specify that the inculpatory items were located in the same bags as the documents containing the Davises' names. He obtained no forensic evidence linking the Davises to the items and no recitation of any such evidence appears in the affidavit.

Because the information omitted was so clearly material to the issuing judge's determination, I find and conclude that Sargent Abromowich acted recklessly in omitting it. *Stewart v. Donges*, 915 F.2d 572, 583 (10th Cir. 1990). With the omitted material inserted, the affidavit provides insufficient information to predicate probable cause. My analysis ends here because the *Leon* good-faith exception does not salvage a warrant affidavit that violates *Franks*. *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *United States v. Orr*, 864 F.2d 1505, 1508 n.3 (10th Cir. 1988). *See also*, *Vigeant*, 176 F.3d at 575.

Accordingly it is ORDERED that the Defendant's Motion to Suppress is GRANTED.
Dated: March  28 , 2006, in Denver, Colorado.

                        BY THE COURT:

                        s/Lewis T. Babcock

                        Lewis T. Babcock, Chief Judge